IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2001

## STATE OF TENNESSEE v. CHARLES L. DEBUTY

**Direct Appeal from the Circuit Court for Blount County**
**Nos. C-12524, C-12599, C-12600, C-12603, C-12607     D. Kelly Thomas, Jr., Judge**

---

**No. E2000-03039-CCA-R3-CD**
**October 9, 2001**

---

The defendant pled guilty in the Blount County Circuit Court to four charges of theft and one charge of automobile burglary. The court sentenced him to an aggregate sentence of four years, with seven months in jail, and the balance to be served on intensive probation. In this appeal as of right, the defendant argues that the trial court imposed an excessive amount of incarceration. After careful review of the record, we affirm the defendant's sentence but remand for entry of a corrected judgment in No. C-12607.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and
Remanded for Entry of Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal); Raymond Mack Garner, District Public Defender; and Shawn G. Graham, Assistant District Public Defender (at trial), for the appellant, Charles L. Debuty.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Michael L. Flynn, District Attorney General; and William R. Reed, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Charles L. Debuty, pled guilty to three charges of theft of property over $1000, a Class D felony, one charge of theft of property over $500, a Class E felony, and one charge of automobile burglary,[1] a Class E felony. All charges stemmed from criminal acts occurring in July,

---

[1]Indictment No. C-12607 charged the defendant with burglary of a motor vehicle, in violation of Tennessee Code Annotated Section 39-14-402, and he pled guilty to that offense. However, the judgment for this indictment recites

(continued...)

August, and September 1999, when the defendant and others stole a Kawasaki motorcycle, a Yamaha all-terrain vehicle, a Honda four-wheeler, four chrome automobile wheels, and broke into another automobile. Pursuant to the plea agreement, the defendant received an effective four-year sentence with the manner of service to be determined by the trial court. Following a consolidated sentencing hearing, he was sentenced as a Range I, standard offender, to an aggregate sentence of four years with seven months to be served in local confinement and the balance on intensive probation. Additionally, the court ordered that the defendant pay $2750 in restitution. In this appeal, the defendant challenges the manner of service of his sentence, asserting that the trial court imposed an excessive term of confinement.

## DISCUSSION

At the time of sentencing, the defendant was a twenty-two-year-old high school dropout. He had been living with his mother and stepfather for about two and one-half years, and had been employed full-time for the past year. He also worked occasionally for his stepfather as a roofer. The defendant had regularly smoked marijuana since the age of sixteen. He was also addicted to crack cocaine at the time of the instant offenses.

At the sentencing hearing, the defendant testified that he had been "mixed up with some people that was pretty much strung out on coke real bad," and that they stole the motorcycles and four-wheeler to get money for drugs. He admitted having a substance abuse problem but claimed that he had not used cocaine in over a year. The defendant also admitted that his drug screen for the presentence report tested positive for marijuana and that he still smoked marijuana and drank alcohol occasionally. Regarding his marijuana use, he stated, "And if it's there, you know, if it comes around, you know, I might hit it once or twice and pass it on. Just where I'm at basically."

The defendant's mother, Janice Johnson, testified on the defendant's behalf. She said that the defendant had lived with her and her husband for the past two and one-half years, and that she had seen "a big difference" in her son during the past year. She further said that the defendant no longer associated himself with the people who were a bad influence on him, and that this incident had "got[ten] his attention real well."

The defendant's work supervisor, William Wesley Matlock, also testified on the defendant's behalf. He stated that the defendant was "a good worker," "a dependable employee," and seldom missed work. He said that the charges against the defendant had not affected his job performance in any way.

## ANALYSIS

---

[1](...continued)
that the defendant's guilty plea was to theft, in violation of Tennessee Code Annotated Section 39-14-103, also a Class E felony. Accordingly, we remand to the trial court for entry of a corrected judgment, showing that the plea of guilty was to burglary of a motor vehicle, in violation of Tennessee Code Annotated Section 39-14-402, a Class E felony.

## Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

## Length of Confinement

The defendant argues that the trial court erred in sentencing him to seven months of confinement. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing, in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (1997). As a standard offender who pled guilty to three Class D felonies and two Class E felonies, the defendant was presumed to be a favorable candidate for alternative sentencing. However, if the court is presented with "evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision." Ashby, 823 S.W.2d at 169. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made a part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). Evidence sufficient to overcome the presumption includes evidence showing that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," "[c]onfinement is necessary to

avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or "[m]easures less restrictive than confinement have frequently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997); see Ashby, 823 S.W.2d at 169.

The burden was upon the defendant to show that he was a suitable candidate for probation. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-303(b) (1997). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Another appropriate factor is the defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id.

The defendant argues that, in setting his sentence, the trial court should have considered his remorse and willingness to plead guilty in these cases as mitigating factors. He asserts that his lack of a "particularly lengthy" criminal record and his "ability to wean himself from his cocaine addiction" weigh in favor of his being granted less jail time. Also, he argues that, although he had not received intensive treatment for his drug addictions, he had been able to cease his use of cocaine, demonstrating that he has good potential for rehabilitation.

At the sentencing hearing, the trial court explained why the defendant was being sentenced to split confinement:

> You will serve this sentence, seven months in the jail and the rest of it on intensive probation. And that is basically half of your release eligibility if I didn't put you on probation at all. The reason – that is an alternative sentence, but the reason I'm not putting you on immediate probation is – well, there are many reasons. The reasons are many.
>
> Number one is your criminal history. You've been on probation or release type programs many times since you were a very young man – or a teenager. And continue to commit more crimes. The likelihood of your being effectively rehabilitated is not good, because rehabilitation efforts have all failed up to this point. You say that you are hanging out with different people, that you've gotten rid

-4-

of this old crowd, that you're not being influenced by people like that. But, still, you're smoking marijuana three or four times a week. And the legislature still says that's a crime.

**THE DEFENDANT:** I haven't messed with it in a couple of weeks, three weeks.

**THE COURT:** Okay. You smoked marijuana after you pled guilty in these cases back in August of this year. Here you are facing a four-year prison sentence, possibly. Nothing to you, you go out and party and smoke a little marijuana. Which tells me a lot about your attitude. You haven't made all the progress you need to make. You may have made some. I won't discount that. And I think part of it is the fact that you have yet to really be punished for any of the crimes that you've committed. So, that's also part of this sentence. Hopefully, you will see that you can't continue to do this in any shape, form, or fashion.

You will be eligible for work release during your seven months in jail, but you cannot get work release until you can have a clean drug screen. So, how much you are delayed in getting work release is a direct result of your breaking the law since you pled guilty.

As the record shows, the defendant has a steady history of criminal activity. According to the presentence report, the defendant had been convicted of misdemeanor theft on May 14, 1999, and was given a suspended sentence of eleven months, twenty-nine days and ordered to pay a fine, costs, and restitution. Thus, at the time he committed the offenses which are the basis for this appeal, he was serving a suspended sentence for his theft conviction.

The defendant also was convicted of reckless driving and underage possession and transportation of beer on December 6, 1999, for which he received a six-month suspended sentence. He was convicted on April 26, 1999, of two counts of misdemeanor drug possession, apparently occurring on October 2, 1998, and January 20, 1999. His punishment for one included a thirty-day suspended sentence with eleven months, twenty-nine days probation; the punishment for the other is not set out in the presentence report. On October 31, 1997, he had apparently been placed on diversion for vandalism. Thus, since his eighteenth birthday, it appears that the defendant had been on probation three times and diversion once. Further, the defendant had two arrests for violation of probation on November 18, 1998, and February 14, 2000.

The defendant had also been convicted of attempted burglary when he was a juvenile, for which he had been ordered to complete a program at the Peninsula Lighthouse. The defendant testified that Peninsula Lighthouse transferred him to Cornerstone Behavioral Center, where he

received outpatient therapy, consisting of group meetings and Alcoholics Anonymous meetings, for about six months.

Based upon our review, we conclude that the trial court "considered the sentencing principles and all relevant facts and circumstances." Although barely in his twenties, the defendant had already amassed a growing record of arrests on a fairly regular basis. The reverse side of the defendant's argument that he should be credited for ceasing to use cocaine is the fact that even with the knowledge that he would soon have a sentencing hearing for five felony convictions, he was unable to refrain from using marijuana. The presentence report certainly affirms the trial court's observation that there had been few consequences to the defendant for his prior crimes other than, once again, to be placed on probation. Prior attempts at rehabilitation appear to have made little impression on the defendant. Accordingly, we cannot conclude that the trial court erred in determining that the defendant should serve a period of incarceration before embarking upon intensive probation.

## CONCLUSION

After carefully reviewing the record, we conclude that the defendant has failed to carry his burden of showing that the manner of service of the sentence imposed was inappropriate. Accordingly, the judgment of the trial court is affirmed, but the matter is remanded to the trial court for entry of a corrected judgment in No. C-12607.

_____
ALAN E. GLENN, JUDGE